IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BETTY TOWNSEND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:03CV272-SRW |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Betty Townsend brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On April 9, 1999, plaintiff filed an application for disability insurance benefits. On October 23, 2000, after her claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on December 14, 2000 in which he found, *inter alia*, that: (1) plaintiff was insured for purposes of disability benefits

through June 30, 1998;[1] (2) plaintiff is unable to perform any of her past relevant work; (3) plaintiff retains the residual functional capacity for a significant range of light work; (4) using the grids as a framework for analysis and based upon the testimony of the vocational expert, there are a significant number of jobs in the national economy that plaintiff could perform; and (5) she was not under a disability as defined in the Social Security Act at any time through the date of the decision. On January 17, 2003, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity

---

[1] Plaintiff's previous applications for benefits were denied at the initial level in August 1997 and March 1998 and were not further appealed. (R. 17). Thus, any period of disability prior to March 1998 is not at issue in this case. Additionally, since plaintiff's disability insured status expired on June 30, 1998, plaintiff must demonstrate an onset of disability on or before that date.

attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff raises one specific challenge to the decision of the Commissioner.[2]  She contends that the ALJ's determination that she retains the residual functional capacity for light work is not supported by substantial evidence because the ALJ  erred by failing to give sufficient weight to the assessments of Mr. Haskey, an occupational therapist, Dr. Kevin Henderson, a physician who performed a consultative medical examination, and a panel of consulting physicians who provided a report to the State of Washington Department of Labor and Industries – assessments which, according to plaintiff, restrict her to sedentary work – and instead relying on the assessment provided by a non-medical evaluator employed by the Alabama State Disability Determination Service.  Plaintiff argues that the acceptable medical evidence of record establishes that she has a residual functional capacity for only sedentary work and that, under grid Rule 201.12, she is disabled.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997)(citing 20 C.F.R. § 404.1545(a)).  In challenging

---

[2] Plaintiff argues generally that the Commissioner's decision is not supported by substantial evidence and improper legal standards were applied.  (Plaintiff's brief, Issue I).  The court will discuss only the specific arguments raised by the plaintiff in her brief.  See procedural order (Doc. # 3) at p. 2 n. 1.

the ALJ's RFC finding, the plaintiff first quotes a portion of a report from Steven Haskey, an occupational therapist, rendered after a consultative evaluation on May 19, 1998:[3]

> Based on testing and the PCE [Physical Capacity Evaluation] evaluator's findings, Ms. Betty Townsend demonstrated the capability of performing work at the sedentary physical demand characteristic of work category. The issue of lifting below the waist was not due to the left shoulder, but complaints of low back pain.[4] She is capable of performing work 8 hours out of an 8 hour day as described by the parameters of the PCE summary.

(R. 233, cited in Plaintiff's brief at p. 6). Plaintiff argues that "[t]his conclusion was made in spite of the fact that the occupational therapist observed that Mrs. Townsend may not have put forth maximum effort because of a great deal of fear of re-aggravation of the injury." (Plaintiff's brief, p. 6). However, Haskey's report states:

> Overall, the PCE evaluators perceive Ms. Betty Townsend to have put forth less than true voluntary effort. It is noted, however, after lengthy discussion with the client and the client's spouse, the client appears to have a great deal of fear of re-aggravation and also a very difficult time understanding her injury and how her body functions. Due to this, it is difficult to determine if this less than voluntary effort was due to poor effort or fear of re-aggravation/difficulty understanding the body's functions. The subjective reports did, however, appear to strongly outweigh the objective findings indicating symptom magnification.

(R. 233). The evaluation also stated that "[b]ased on testing and the PCE evaluator[']s observations, Ms. Betty Townsend was able to *demonstrate* safely handling 15 pounds from waist to shoulder height, 5 pounds shoulder to overhead height and carry 10 pounds. All on a seldom basis." (R. 231)(emphasis added). He continued, "Her descriptions of symptoms

---

[3] This examination was conducted six weeks before the expiration of plaintiff's insured status.

[4] Plaintiff declined to be tested with regard to floor to waist height lifting "due to complaints of fear of re-aggravation of back pain." (R. 231).

4

during maximum effort testing, however, were once again vague and did not appear consistent given objective findings. (Id.) ("continued fluid movements, no increased in pace variation, postural changes and facial grimacing.")  The plaintiff suggests that Haskey's finding that plaintiff demonstrated the ability to perform sedentary work for 8 hours out of an 8 hour day should have been construed by the ALJ as a conclusion that she was limited to sedentary work.  However, that is not what Haskey's report says.  He first states that she *demonstrated* the ability to perform sedentary work, then indicates (in more than one place in his report) inconsistencies between plaintiff's subjective complaints and objective findings, the possibility of less than true effort during testing, and symptom magnification.  A reasonable interpretation of Haskey's report is that while plaintiff *demonstrated* the ability to perform sedentary work, her true abilities would be higher absent symptom magnification.

The ALJ's decision not to render an RFC consistent with the capabilities actually demonstrated by the plaintiff during this evaluation is supported by additional evidence of record.  A physical therapist also evaluated plaintiff on May 19, 1998, the same day, and noted that "[t]hroughout this musculoskeletal evaluation, this patient displayed responses and behaviors consistent with a high level of symptom magnification." (R. 235).  The physical therapist listed several examples of the behaviors that led to his conclusion:

> 1. Exaggerating patellar tendon reflex response by initially lifting the entire left lower extremity up from the hip and then actively kicking the foot out with a voluntary contraction of the quadriceps. This response was not only inappropriate to the test being done, but also highly inconsistent with the negative findings noted with the other neurological symptom tests including a lack of clonus in either the upper or lower extremities.

5

  2. Subjective reports of increasing lower back even with gross manual muscle testing of the finger abductors and adductors let alone all gross manual muscle tests of both upper extremities.
  3. Subjective reports of increased low back pain with gross manual muscle tests of all the major motions of the lower extremities including even ankle and great toe extensor test.
  4. Actively resisting passive intervertebral motion tests when the patient actively was able to rotate cervical spine at least 75 degrees in either direction.
  5. Reporting considerable increase in lower back pain when passively testing the mobility of either patella which requires absolutely no active lower extremity movement.
  6. Subjective complaints of increased low back pain with the patient in supine and hook-lying position while fingertip axial loading supplied to the top of the head and grade 2 to 3 axial distraction was applied to the mid cervical spine when previous to this, while in the sitting position, equal force was applied to both axial compression and distraction resulting in subjective complaints of increased pain stopping the lower cervical spine.

(Id.).  The physical therapist described plaintiff's "inappropriate responses and behaviors" as "clearly consistent with a high level of symptom magnification."  (Id.).

  Additionally, the May 19, 1998 examination was a re-evaluation requested by plaintiff's attorney and vocational counselor because an earlier physical capacities evaluation "documented a great deal of inconsistencies and overall poor effort." (R. 231).  The previous evaluation had been conducted on March 4, 1998, two months earlier.  During that evaluation, the occupational therapist and physical therapist had also noted subjective complaints inconsistent with objective observations and findings.  (R. 238-43).  Haskey concluded:

> Based on testing and the PCE evaluator's findings, Ms. Betty Townsend *demonstrated* the capability of performing work at the sedentary physical demand characteristics of work category. She is capable of performing 8 hours out of an 8 hour day as described by the parameters of the PCE. *It is also*

6

> *perceived that the client could perform at a higher work level. The inconsistencies noted above appear to have clouded her true capabilities.*

(R. 240)(emphasis added). It is reasonable to infer from this conclusion that "demonstrated" capabilities as used by Haskey refers to how plaintiff actually performed during the testing, and not to how he believes she could have performed given true effort on her part. The ALJ's conclusion that plaintiff retained the residual functional capacity to perform light work (with specified limitations) is not inconsistent with Haskey's report. Additionally, as the ALJ notes in his decision (R. 19), Haskey found the claimant capable of alternately sitting, standing and walking for a total of eight hours in an eight hour day. (R. 230, 238).

Plaintiff next suggests that the vocational expert testified that the restrictions identified by the panel of physicians in an October 1998 report to the State of Washington Department of Labor and Industries "would not permit the plaintiff to engage in substantial gainful activity at even the sedentary level of physical exertion." (Plaintiff's brief, p. 7). However, plaintiff overstates the VE's testimony. The VE's testimony with regard to the panel report was in response to a question from plaintiff's counsel. Plaintiff's counsel represented to the VE that the PCE indicated that "[d]uring an entire eight-hour workday, this individual can sit a total of two hours, stand a total of two hours, and walk a total of two hours." (R. 58-59). After paraphrasing the remainder of the PCE (found at R. 267), plaintiff's counsel asked the VE, "Do jobs exist in significant numbers in the national economy for the individual that I have described to you?" (R. 59). The VE responded "No," and testified that the reason for this answer was because of the individual's "inability to perform . . . an eight-hour day." (R. 60). However, as plaintiff's counsel now recognizes

(Plaintiff's brief, pp. 7-8) the panel had, on October 15, 1998 – in response to a question from the Department of Labor and Industries – modified the PCE completed on September 10, 1998 to indicate that plaintiff could sit and stand three hours each in an eight-hour day, and could walk two hours in an eight-hour day, for a total of eight hours per day. (R. 246).[5] Counsel's hypothetical question to the VE did not include this information. Counsel now suggests that even if plaintiff could work eight hours a day, the remaining restrictions in the panel report are consistent with sedentary rather than light work. However, a comparison of the limitations of the panel's PCE (as modified)[6] with 20 C.F.R. § 404.1567[7] leads to a contrary conclusion.

Plaintiff next points to a consultative examination conducted by Dr. Kevin Henderson in March 2000. (R. 294). Dr. Henderson completed a physical capacity evaluation in which he noted that plaintiff could frequently lift or carry 10 pounds, stand and/or walk "at least 2 hours in an 8-hour workday" and sit "less than about 6 hours in an 8-hour workday." (R. 299-300). He further noted that she can frequently balance and climb ramps, stairs, ladders, ropes, and scaffolds, and can occasionally kneel, crouch or crawl. (Id.). He noted that plaintiff was capable of unlimited handling, fingering, feeling, seeking, hearing,

---

[5] The panel evaluated plaintiff approximately ten weeks after the expiration of her insured status.

[6] The panel's PCE allowed for frequent lifting of 10 pounds, occasional lifting of 20 pounds, occasional bending, squatting, crawling and reaching above shoulder level and no climbing, and included no restrictions on use of the hands or feet and no environmental restrictions. (R. 267).

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. 404.1567(b).

8

speaking and limited reaching due to her history of left rotator cuff injury, and noted no environmental limitations. (R. 301). In response to a question from plaintiff's counsel regarding the residual functional capacity represented by this assessment, the VE stated:

> It's hard to quantify the [INAUDIBLE] they may not reach a full eight-hour day [INAUDIBLE] says less than six hours in an eight-hour day of sitting and then two hours. So, at best it would be sedentary, but this may be less than that.

(R. 60). Dr. Henderson's evaluation also included X-rays of plaintiff's lumbar spine and left shoulder. The left shoulder X-ray revealed "normal spacing between her AC joints" and "no evidence of arthritis and normal alignment" and resulted in an assessment of a "[n]ormal left shoulder. The lumbar spine X-ray also resulted in an assessment of "normal," with "normal disc space and height," "no evidence of arthritis," and "normal alignment." (R. 297). In the narrative portion of his report, Dr. Henderson concluded:

> IMPRESSION:
> Pleasant 50 year old female with left shoulder strain, probably mild left shoulder bursitis and chronic intermittent low back pain. She has sciatica by history, but no objective evidence on examination. I think this patient has relatively mild musculoskeletal pain involving her back and shoulder and she is not disabled from a medical standpoint, as evidenced by her physical examination, prior studies and requirement for minimal medications.

(R. 296). Henderson's report could reasonably be read to permit a full eight hour day, as the sum of "at least two hours" and "less than about six hours" could be eight hours or more. Additionally, Henderson did not clearly render any opinion on the amount of weight plaintiff is able to lift on an occasional basis – he did not complete this block of the form. Even assuming Henderson's PCE limited plaintiff to less than a full day of work, or assuming that it otherwise limited plaintiff to sedentary work, the ALJ was not required to adopt this PCE

in the face of other evidence of record that plaintiff was not so limited.

Plaintiff was treated between June 1997 and October 1997 and in December 1998 and January 1999 by Dr. Jonathan Bacon, an orthopedic surgeon with Group Health Cooperative. Dr. Bacon indicated in a March 1998 visit with the "vocational supervisor" for plaintiff that he "consider[ed] Betty Townsend employable at some type of light duty." (R. 273). On December 3, 1998, Dr. Bacon evaluated plaintiff and stated that "she is capable of light duty," but that he did not recommend she return to her "former work as a housekeeper at Park Rose with all the lifting and use of the shoulder that it required." (R. 272). He noted, "She has full range of motion of the shoulder. No focal motor deficit. No impingement signs. Diffuse tenderness anteriorly." (Id.). In January 1999, after reviewing an MRI taken on December 24, 1998 and examining the plaintiff, Dr. Bacon again indicated that he "recommend[ed] a return back to work in a light duty status," but not to her former housekeeping job. He stated, "On examination today she has full range of motion of the shoulder with very minimal impingement signs." He noted that her medical condition was "fixed and stable with respect to her left shoulder." (R. 271). The court recognizes that "light duty" as used by Dr. Bacon does not necessarily equate to the light exertional capacity defined in the Commissioner's regulations. However, it is apparent he determined, based on his examination and the lack of objective signs, that she was not precluded from returning to work. Additionally, as argued by the Commissioner, the residual functional capacity determined by the ALJ is supported by both the PCE rendered by the panel of physicians in

September 1998 and the evaluations conducted by Haskey in March and May 1998.[8]

## CONCLUSION

Upon review of the record as a whole, the court concludes that the ALJ's determination of plaintiff's residual functional capacity is supported by substantial competent medical evidence. The ALJ's remaining findings are likewise supported by substantial evidence. Since the decision of the Commissioner is supported by substantial evidence and is in accordance with applicable law, it is due to be AFFIRMED. A separate judgment will be entered.

DONE, this 25th day of January, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff concedes that, if the ALJ's determination of plaintiff's residual functional capacity is accurate, the ALJ properly applied the medical-vocational guidelines as a framework for his decision. (Plaintiff's brief, p. 6).